This afternoon is N. Ray Williams, No. 14-1486. Mr. Morris. Thank you, Your Honor. Given our time constraints, I'm not going to try and recapitulate everything from the briefs, but there were three errors in the board's decision that I would like to talk about that I think mandate reversal in this case. The first had to do with the limitation of automatically generating the schedule and specification aspects of an architectural contract document. The error, just factually, the board's decision that that was taught in the Elliott reference was simply not supported by substantial evidence. The second error is a legal error. It relates to the same limitations, and the error was that the board applied its understanding of Elliott to a version of our claims without considering the explicit definitions that we provided for the schedule and specification aspects. And then the final error that I wanted to talk to you about in the board's decision was its reliance on the printed matter rule in order to give no weight to limitations of allowing a user to select specific items, automatically populating a specific form, and specific data with which that form could be populated. Time permitting, I would also like to discuss the office's application of ALICE to our claims, but that was not part of the decision of the board, so I'd like to focus on the errors in that. So, first, starting with the automatic generation of the schedule and specification aspects. The board found that that aspect of our claims was anticipated by Elliott because that reference teaches automatically generating a proposal, and that the proposal would include amounts and detailed descriptions of materials. The problem is that that simply is not correct. It's a factual matter. The sections of Elliott cited in support of that finding relate to allowing the user to select materials that will be used in the building process, and the Elliott's technology calculating the amounts of those materials and then the cost of those materials based on the user's selection as well as plans that have been previously provided. Those sections don't talk about automatically generating a scheduler specification or indicate that those would be included in Elliott's proposal. Now, the board did have two other findings of fact on the automatic generation question. Those were its eighth and ninth findings, but those referred simply to saying that Elliott's technology can prepare the proposal and that it can be submitted to contractors and they can bid on it or revise it or suggest changes. They don't say that Elliott's proposal would include scheduler specification or, if it does, that those aspects would be automatically generated as is required by our claims. So, that's the first error in the board's opinion that I wanted to talk about. The second is that even if the board's supported by substantial evidence, that its comparison of that to our claims was legally improper because we provided explicit definitions for the scheduler specification and those weren't used by the board. This court has held that when the meaning of claim terms is a disputed issue, the board is required to set forth its construction of those terms explicitly in its decision. And in this case, I think the board did that using parentheticals to indicate that it was interpreting the schedule as meaning amounts of materials and the specification as meaning detailed descriptions of materials. The problem is, those were not our definitions. And not only were they not our definitions, they were materially different from our definitions. To take the example of the specification, our definition required that the specification provide written, detailed descriptions of the materials and processes that make up the building. The board's definition and its analysis didn't have any treatment of the processes that make up the building, focusing only on the materials. And so, even if the board's understanding of what Elliott teaches was supported by substantial evidence, its application of that understanding to our claims was simply unsupportable because of their failure to use the correct constructions that we provided for our terms. Now, the final error in the board decision that I wanted to talk about was its use of printed matter cases. To give no weight to limitations of allowing the user to select specific items, automatically populating a specific form, and then specific data that that form would be populated with. There's actually, from a legal standpoint, not really any disagreement between ourselves and the office on this case because we both agree that in an instance where a claim requires information to be processed by argument is to say, well, those cases are an example of a broader rule, that when you have limitations which are not functionally related to the rest of the claim, that you can give them no weight. We go through in detail in our briefs what the limitations are and how they're related. And, again, I don't want to recapitulate everything, but setting that to the side, there's no support for that rule existing at all. The only support for its existence or its adoption that the office has been able to provide is the printed matter cases themselves. And we all agree that those don't apply where you have information processed by a computer. Moreover, the rule that's proposed by the office would be inconsistent with the general... situation where you have information that's perceptible only to the human mind. And what they say is, all right, if that information is printed on some substrate, but it's not functionally related to it, then they don't have to be given weight. But with a computer, the information that we recite is only perceptible or even accessible when you actually use that with the computer itself. It's not something that would be done by a human mind. I mean, you're saying that you'd throw in the trash bin the whole printed matter doctrine if you've got a computer involved? I think that when you're reciting specific limitations about specific steps that the computer would perform, for example, that it would populate fields in a form with specific data, which is one of the steps that we recite that was given no weight, I think that the printed matter simply doesn't apply in that case. So you can get patents on showing different fields in a computer depending on the subject matter of the field? I don't think you can, Your Honor. And the reason I think that even if the printed matter is treated as not applying in a case where information is processed by a computer is because if you have some limitation that has no innovation relative to the prior art, then that claim that recites those patents is not obvious, either over whatever primary reference has been relied on or by that reference. So you have to get into an obviousness analysis and secondary considerations and all that before you can reject a patent claim based on the fact that you've named one field one thing and another field another thing? I think that it's somewhat different than simply, or the position I'm trying to advance is somewhat different than simply referring to the names of fields in a form, but if you're talking about specific data that's processed by a computer and it's applied in a particular way that isn't taught in the prior art, I think if there is a limitation that is not disclosed in a prior art reference that, in general, that reference shouldn't be treated as anticipatory. If we assume that the broader claims of, you input data about building new buildings and new buildings and new buildings and new buildings and new buildings and new materials or things like that are anticipated, but because the prior art reference doesn't have all these dependent claims saying singling out every specific category of data, shingles, doors, anything like that, floor tiles, that just because you now name specific categories that they're not anticipated to, even if they're included in that broader category of putting in building materials. You'd have to find somebody who named shingles before. But let's assume that nobody's written a patent that specific. A patent system may be anticipated, but you can patent specific input of shingles because nobody has thought to break it down that far. I think that our particular inputs are different in kind from what is taught in this particular prior art reference. The reason for that is because our forms that you input things... But let's assume they're not. Let's assume that the broad category that you're talking about of building materials includes all these things and that that broad category is anticipated by the reference. What we're talking about now, I think, is by breaking down that broad category into specific named categories, does that get it out of anticipation? I think that identifying additional limitations that are not there does get it out of anticipation, but make it an obvious misrejection if it's proper at all. I see that I have about four minutes left, which I was hoping to reserve for rebuttal. You can reserve that for rebuttal.  The issue that William's counsel brought up about the board not properly finding that the step of automatically generating a claimed schedule and specification is not in Elliott is not accurate. The board actually did make a finding that the claimed schedule, which the board found to be a list of repetitive... I'm sorry, a list of attributes of repetitive building parts, is in fact in Elliott when it found that Elliott disclosed that its proposal includes specific flooring product data, such as product type, product description, product ID code, supplier names, cost per unit, and installation times of the product. The board also found that Elliott discloses the specification, which is found to be detailed written descriptions of materials and processes that make up a building, when the board found that Elliott's proposal included product descriptions of floor materials, which is the written description of materials. Then it also went into information on square footage, cost data, and installation of the floor materials, which it considered to be the processes that make up a building. In addition, the board found that these parts of the construction proposal were automatically generated when it found that in Elliott, it teaches that when a user inputs data into a prompt window, the program then automatically populates this information into the construction proposal. So the board didn't have any claim construction that was different from what the claims intended, and the board did make a finding that is supported by substantial evidence that this step has been met in Elliott. With regards to the printed matter discussion, Mr. Williams claims that because this is a system that involves a computer, that you can't apply printed matter to this case, and that's actually not true. Lowry, which is a case that we cited in our brief, actually says that when there is underlying data that's simply sitting in a database, you can apply printed matter by analogy. Here, the board correctly applied the printed matter doctrine to the shingles and wind rating, exposed flashing, concealed flashing limitations, when it found that they're not entitled to patentable weight, because they're not functionally related to the underlying process in those claims. If you were to swap out shingles with flooring or doors, the claims would still perform the exact same way. In addition to that, if you look at Elliott, Elliott discusses shingles. It doesn't include the same detail, but if you have an architectural form that can relate to shingles, then one can assume that the attributes relating to that form would be included. Elliott didn't break it down as specifically, but it says in Table 7 that there are steps that you take, and one of those steps is considering shingles. One could say, well, if you're having an architectural form that has shingles, it's obviously going to have things like wind rating, concealed flashing, and exposed flashing as well. The board properly did apply the printed matter doctrine to those limitations. I would just like to conclude, because I think I've addressed everything that Mr. Williams' counsel brought up, unless there's further questions, that we think that we have a strong 102 argument, and that this court should affirm the board's decision. We did bring up the 101 issue simply because we wanted it to be complete, and we know there are times when this court has asked for the agency's opinion on whether or not we thought claims were eligible. There are no further questions. Mr. Morris. Thank you, Your Honor. I will be brief. It sounds like there are two issues that were raised that I'd like to address, and then I think I shall be done for the day. The first is the nature of the material that was dismissed as printed matter, and one of the things I want to make sure that I am clear on is that it's not simply saying we have more detail than Elliot happened to explicitly say. It's actually different in kind, and you can see this from the arguments that were made where in Elliot, the figure five in Elliot shows the kind of data that they would have for flooring or it seems any of their types of architectural materials. They'd have costs, they'd have amounts of it, but there's nothing specific to any particular architectural category, and when this was brought up in the reply, the assumption was that any prior art disclosing relationships of attributes of a floor, such as durability ratings, specific flooring items, would be processed in the same way as the information in the claimed shingles form is processed, but we know for a fact that, for example, durability rating, and indeed any specific flooring attributes are not present in the form for Elliot, whereas the wind rating, the concealed flashing, the exposed flashing, these are shingles specific attributes that would be populated, and so it's true that Elliot doesn't go into the same level of detail, but it also doesn't go into the same type of detail, and simply assuming that it would provide that detail is both I do not believe sufficient for anticipation finding, especially in the absence of a finding of fact, and also I believe that it is contradicted by what Elliot does say that it collects for the flooring form. And then the final point I wanted to address was what the board found and what it treated as its interpretations of the schedule and the specification, and the board was actually explicit as to what its meaning it interpreted these terms as having. The specification did not address the processes, the findings of fact didn't address this, and the analysis that was applied on the board decision on page 7, page 8 of the joint appendix also didn't go into any detail or indeed mention the processes that are part of a building, and that's something that if you're going to generate an architectural contract document is a critical feature of that document, and is something that distinguishes our invention from the prior art reference which would not generate the same kinds of output or do it in the same manner. And for those reasons we believe that the board's decision should be reversed. Thank you.